## MORRIS *v.* WATTERSON *et al.*

A testator, in the 5th item of his will, declared: "It is my will and desire to try as near as possible to treat my children equally and justly, and here I make this explanation in order that all may understand. I feel that I have heretofore given to my beloved daughter Mrs. Elizabeth P. Chapman, and her heirs, as much or more than I will be able to give, or do for the others of my children, and for this reason I make no further provision by this will." In the 6th item a life-estate in certain described land was given to a daughter of testator and her husband, with the direction that after the termination of such estate

the premises should "revert back to my estate, to be equally divided between my legal heirs and their representatives." The 10th item was: "I . . direct that after all the foregoing provisions . . have been complied with, that the . . . residue of my estate not herein disposed of shall be sold, [and after the payment of debts, etc.] the remainder . . , if any, arising from the sale, . . to be equally divided share and share alike between my heirs being named and designated, except the heirs of my daughter Mrs. Elizabeth P. Chapman, who have had their share as above stated." *Held*, that an heir of Mrs. Chapman was not entitled to any interest, after the death of the life-tenants, in the land mentioned in the 6th item of the will.

Argued November 25, 1907.—Decided March 28, 1908.

Equitable petition. Before Judge Worrill. Clayton superior court. August 31, 1907.

*J. F. Golightly,* for plaintiff, cited *Ga. R.* 12/163; 78/475; 102/45; 31/743; 56/275 (3); 79/28; 80/367; 100/780; 110/729; 75/540.

*Watterson & Blalock* and *John D. Humphries,* for defendants, cited Civil Code, § 3324; *Ga. R.* 2/307; 4/377; 12/47; 15/122; 23/515; 26/225; 41/554; 48/596; 67/72; 72/850; 74/133; 99/-560; 115/893; 116/257; 126/740; 124/204; 107/591.

FISH, C. J.  This case turns upon the construction of the will of Radford E. Morrow. The first item of the will provides for the burial of the testator's remains. In the second item a life-estate in two described parcels of land is given to the widow of the testator. Item 3 gives the remainder, after the termination of this life-estate, in one parcel of the realty mentioned in the second item, to Mrs. Mary F. Watterson, daughter of the testator. Item 4 gives to J. W. Morrow, his son, the remainder in the other parcel of realty mentioned in the second item. We quote items 5 and 6: "Item 5. It is my will and desire to try as near as possible to treat my children equally and justly, and here I make this explanation in order that all may understand. I feel that I have heretofore given to my beloved daughter Mrs. Elizabeth P. Chapman, and her heirs, as much or more than I will be able to give, or do for the others of my children, and for this reason I make no further provision by this will." "Item 6. I desire and direct that lands and premises now occupied and in possession of A. J. Vinyard and Mrs. Nancy H. Vinyard, known as the place bought from Adamson near the mill, shall go to and be the property of said daughter, Nancy H. Vinyard, and her hus-

'band, A. J. Vinyard, for and during their natural lives, for their own use and benefit, and especially desire and direct that if the said Nancy H. Vinyard should die before the said A. J. Vinyard, then the said A. J. Vinyard to have the full use and benefit of the rents, issues, and profits of said land and premises for and during his natural life, and after his death the said premises to revert back to my estate, to be equally divided between my legal heirs and their representatives and descendants." In the 7th item certain described lands are given to Mrs. E. T. Sears, a daughter of the testator, and her husband, for life; and should she die without child or descendants, "the lands to revert back to my estate and be equally divided between my legal heirs and their representatives." The 8th item gave certain described realty to Mrs. Mary F. Watterson. The 9th item is not material. The 10th item is as follows: "I desire and direct, that after all the foregoing provisions of this my last will and testament have been fully complied with, that the remainder and residue of my estate not herein disposed of shall be sold by my said executrix, . . and first pay off all of my just debts and liabilities, . . . . and then pay over to my beloved wife . . . the sum of one thousand dollars ($1,000.00); and then the remainder and residue, if any, arising from the sale of my property to be equally divided share and share alike between my heirs being named and designated, except the heirs of my daughter Mrs. Elizabeth P. Chapman, who have had their share as above stated herein." After the death of Mrs. Nancy H. Vinyard and the death of her husband, A. J. Vinyard, and subsequently also to the death of Mrs. Elizabeth P. Chapman, Mrs. Chapman's daughter, Mrs. V. A. Morris, as her sole heir at law, and as heir at law of Radford E. Morrow, brought an action against Mrs. Mary F. Watterson, and against J. W. Morrow as an individual and as executor of the will of Nancy H. Vinyard, and against Mrs. E. T. Kent, formerly Mrs. Sears, to recover an interest in the land described in the 6th item of the will. Her petition was dismissed upon general demurrer, and the case is here for review, upon a writ of error in her behalf.

The petition was properly dismissed on demurrer. It is quite clear to us that the plaintiff has no interest in the land in dispute, as it was evidently the intention of the testator that neither his daughter Mrs. Elizabeth P. Chapman, nor her heirs, should

take anything under his will. Equality was his testamentary scheme in the distribution of his property among his children. In item 5 he expressly stated that previously to the execution of his will he had given to his daughter Mrs. Elizabeth P. Chapman, and her heirs, as much or more than he would be able to give to his other children, and then said: "and for this reason I make no further provision by this will." Make no further provision for whom? Obviously, we think, the meaning of the testator was, that, for the reason given, that is, that Mrs. Chapman and her heirs had already received from him as much or more than he could give to his other children, he would make no further provision for Mrs. Chapman or her heirs in his will. That such was the meaning and purpose of the testator, we think, appears. also from the latter portion of the 10th item, where he directs that the "residue, if any, arising from the sale of my property to be equally divided share and share alike between my heirs being named and designated, except the heirs of my daughter, Mrs. Elizabeth P. Chapman, who have had their share as above stated herein." Have had their share of what? Evidently their share: of his property or estate. The authorities cited by counsel for the plaintiff in error, for so construing a will as to prevent the disinheritance of an heir by implication, have no application to this case, as Mrs. Chapman and her heirs were not disinherited. The testator expressly stated in the 5th item of his will that he had already given them as much or more than he would be able to give to his other children. What, or how much, he had given them does not appear, but in the estimation of the testator it was. the full share which they should receive from his estate. The intention of the testator, as gathered from the 5th and 10th items of the will, being, in our opinion, clear, that neither Mrs. Chapman nor her heirs should take anything under the will, the language of the 6th item will not be so construed as to allow plaintiff to take as an heir at law of the testator, although such language would include her but for the contrary intention elsewhere expressed. See, in this connection, *Lamar* v. *McLaren,* 107 *Ga.* 591 (34 S. E. 116).

*Judgment affirmed. All the Justices concur, except Beck, J., who dissents.*